STATE ex rel. Harold D. LINTHICUM
and Delmar Giles, d/b/a Bluff City
Shows, Relators,

v.

The Honorable Michael B. CALVIN,
Division I, Circuit Court of the City
of St. Louis, Missouri, Respondent.

No. SC 83558.

Supreme Court of Missouri,
En Banc.

Oct. 23, 2001.

Charles H. Cole, Dolores Ayala, Schuyler, Roche & Zwirner, P.C., Chicago IL, Brent J. Burtin, Vincent Venker, Gerard Noce, St. Louis, for Relators.

Paul J. Passanante, Jason E. Dodson, John G. Simon, St. Louis, for Respondent.

PER CURIAM.

Relators, Harold D. Linthicum, and Delmar Giles, d/b/a Bluff City Shows, ask this Court for an extraordinary writ prohibiting respondent from proceeding in an underlying tort case brought against them. They contend that the Circuit Court of the City of St. Louis deprived them of their right to proper venue as provided in chapter 508, RSMo 2000. This Court has jurisdiction. Mo. Const. art. V, sec. 4. The preliminary writ is made absolute so that the circuit court is ordered to apply section 508.010, RSMo 2000, in a manner consistent with this opinion.

## I. FACTS

On August 28, 1998, Plaintiff Kathy Penny filed a one-count petition in negligence against Defendant Delmar Giles, d/b/a Bluff City Shows, in the Circuit Court of St. Francois County, Missouri, alleging that she sustained personal injuries as a result of a fall from the car of a Ferris wheel operated by Defendant Giles at the St. Francois County Fair in Farmington, Missouri. Plaintiff subsequently filed amended petitions in the St. Francois County case, naming Defendants Forsythe and Dowis Rides, Inc., and Reithoffer Shows, Inc., two previous owners of the Ferris wheel, as additional parties. On June 13, 2000, after substantial discovery, Plaintiff voluntarily dismissed the St. Francois County lawsuit without prejudice.

On June 20, 2000, Plaintiff refiled her petition in the Circuit Court of the City of St. Louis, naming only one defendant, Harold Linthicum, an employee of Defendant Giles. Linthicum is a citizen and resident of Arkansas. Giles resides in Butler County, Missouri. The allegations against Linthicum were that he operated the Ferris wheel and maintained it on or about the time Plaintiff allegedly was hurt. Plaintiff claimed that venue in the City was proper under section 508.010, RSMo 2000, because Linthicum was a nonresident of Missouri and because he was the sole defendant.

The following day, June 21, 2000, Plaintiff requested and was granted leave to amend her petition to add as defendants Relator Giles and the other defendants from the St. Francois County case, as well as two additional defendants.

Thereafter, Relators Linthicum and Giles timely filed a motion to transfer venue, which was denied on February 1, 2001. Relators then filed a petition for writ of prohibition in the Missouri Court of Appeals, Eastern District, which also was denied. The writ petition was refiled in this Court, which issued its preliminary writ.

## II. ANALYSIS

### A.

Prohibition is a discretionary writ, and there is no right to have the writ

issued. *State ex rel. K–Mart Corp. v. Holliger*, 986 S.W.2d 165, 169 (Mo. banc 1999). Prohibition will lie only to prevent an abuse of judicial discretion, to avoid irreparable harm to a party, or to prevent exercise of extra-jurisdictional power. *State ex rel. York v. Daugherty*, 969 S.W.2d 223, 224 (Mo. banc 1998). Nevertheless, prohibition may be appropriate to prevent unnecessary, inconvenient, and expensive litigation. *See State ex rel. Police Ret. Sys. of St. Louis v. Mummert*, 875 S.W.2d 553, 555 (Mo. banc 1994).

## B.

 "Venue in Missouri is determined solely by statute." *State ex rel. Rothermich v. Gallagher*, 816 S.W.2d 194, 196 (Mo. banc 1991). "The purpose of the venue statutes is to provide a convenient, logical, and orderly forum for litigation." *Id.* The general venue statute in Missouri is section 508.010, RSMo 2000. It states:

Suits instituted by summons shall, except as otherwise provided by law, be brought:

(1) When the defendant is a resident of the state, either in the county within which the defendant resides, or in the county within which the plaintiff resides, and the defendant may be found;

(2) When there are several defendants, and they reside in different counties, the suit may be brought in any such county;

(3) When there are several defendants, some residents and others non-residents of the state, suit may be brought in any county in this state in which any defendant resides;

(4) When all the defendants are non-residents of the state, suit may be brought in any county in this state;

(5) Any action, local or transitory, in which any county shall be plaintiff, may be commenced and prosecuted to final judgment in the county in which the defendant or defendants reside, or in the county suing and where the defendants, or one of them, may be found;

(6) In all tort actions the suit may be brought in the county where the cause of action accrued regardless of the residence of the parties, and process therein shall be issued by the court of such county and may be served in any county within the state; provided, however, that in any action for defamation or for invasion of privacy the cause of action shall be deemed to have accrued in the county in which the defamation or invasion was first published.

Section 508.010, RSMo 2000.

 In *State ex rel. DePaul Health Ctr. v. Mummert*, 870 S.W.2d 820 (Mo. banc 1994), this Court held that "venue is determined as the case stands when *brought*." *DePaul Health Ctr.*, 870 S.W.2d at 823.[1] Relying on *DePaul*, the circuit court in this case concluded that if venue was proper when the petition was *originally* brought, a subsequent amendment to the petition to add parties was irrelevant for purposes of venue. Under this interpretation, a plaintiff could sue a Missouri resident in any of over one hundred venues by simply suing a non-resident under section 508.010(4), and then amending the original petition to include the Missouri resident.

 "The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words used in their plain and

---

1. In *DePaul,* this Court denied a petition for a writ of mandamus directing the Circuit Court of the City of St. Louis to dismiss an underlying tort case for improper venue even though the plaintiff dropped a party necessary to establish venue in St. Louis City.

ordinary meaning." *Wolff Shoe Co. v. Dir. of Revenue*, 762 S.W.2d 29, 31 (Mo. banc 1988). The word "brought" in the legal context means "to advance or set forth in a court." AMERICAN HERITAGE DICTIONARY 209 (2d Collegiate ed. 1991). Although a suit is "brought" against the original defendants when the petition is initially filed, in like manner, it is also "brought" against subsequent defendants when they are added to the lawsuit by amendment. *Cf. Bailey v. Innovative Mgmt. & Inv., Inc.*, 890 S.W.2d 648, 650–51 (Mo. banc 1995) (distinguishing amendments that commence civil actions from those that merely correct misnomers in original petition).[2]

The circuit court's analysis of the word "brought" assumed a temporal distinction that conferred different venue rights on Missouri defendants depending on whether the plaintiff initially named or subsequently added them to the lawsuit. This construction is contrary to both the plain language of the statute and to the legislature's purpose in delineating the six venue scenarios found in section 508.010. Nothing in that section limits its applicability only to defendants against whom suit is brought in the initial petition. Instead, the word "brought" is subject to a number of specific subdivisions all describing the various situations that might arise regarding the *residency* of all defendants included in the lawsuit.

■ For purposes of section 508.010, a suit instituted by summons is "brought" whenever a plaintiff brings a defendant into a lawsuit, whether by original petition or by amended petition.[3] This interpretation protects all party defendants equally and gives effect to the intent of the legislature in enacting section 508.010(3). *State ex rel. DePaul Health Ctr. v. Mummert* does not hold to the contrary and still applies whenever a defendant is dismissed from a lawsuit rather than added to it.

## III. CONCLUSION

An absolute writ shall issue ordering the circuit court to reconsider the propriety of venue as of the day the underlying petition was amended to include Missouri residents.

LIMBAUGH, C.J., HOLSTEIN, BENTON and PRICE, JJ., concur; WOLFF, J., concurs in part and dissents in part in separate opinion filed; LAURA DENVIR STITH, J., concurs in opinion of WOLFF, J.; LAURA DENVIR STITH, J., concurs in part and dissents in part in separate opinion filed; WOLFF, J., concurs in opinion of LAURA DENVIR STITH, J.; WHITE, J., dissents in separate opinion filed; WOLFF and LAURA DENVIR STITH, JJ., concur in opinion of WHITE, J.

MICHAEL A. WOLFF, Judge, concurring in part and dissenting in part.

I join in Judge Stith's opinion concurring in part and dissenting in part. I also join in Judge White's dissenting opinion.

---

2. The statute at issue in *Bailey* mandates that, "Civil actions, other than those for the recovery of real property, can only be *commenced* within the periods prescribed in the following sections." Section 516.100, RSMo 2000 (emphasis added). As Respondent suggests, however, the terms "commenced" and "brought" are commonly deemed to be synonymous. BLACK'S LAW DICTIONARY 192 (6th ed. 1990).

3. The various venue statutes make no provision for intervenors, third party defendants, etc. The Court addressed the third party situation in *State ex rel. Garrison Wagner Co. v. Schaaf*, 528 S.W.2d 438, 442 (Mo. banc 1975), stating, "[I]n third-party practice it need not be shown that venue requirements have been independently complied with but that such may rest on venue properly shown in the original case."

I write separately to suggest that the St. Louis city-county venue maneuvers, which have accounted for much of our case law on this subject, be ended by merging the jury pools in the city and county. If litigants were to get the same jury whether they are in the city or county, they would get juries more broadly representative of the St. Louis community, and the question of venue would be of much less importance.

Venue in Missouri is solely a function of statute, as the principal opinion points out. It is not a matter of convenience, but rather the choice of an appropriate forum. *State ex rel. Public Service Commission v. Dally*, 50 S.W.3d 774, 777 (Mo. banc 2001).

From an advocate's perspective, venue in personal injury cases is all about jurors.[1] The plaintiff's lawyer's two-step maneuver after this case was filed in the city was designed to lay venue in the city of St. Louis.

The preponderance of anecdotal evidence is that jurors in the city of St. Louis are far more favorably disposed toward injured plaintiffs' claims than are their counterparts in suburban St. Louis County or in most other counties in the state.[2]

Differences in the composition of juries from one county to another are commonly noted. Arm-chair psychologists and legitimate social scientists study the effects of race, ethnicity, socioeconomic status, gender, and other factors, including whether the prospective juror lives in a rural or urban area, and draw conclusions about those differences.[3]

The jury is the ultimate democratic institution, and its members reflect the values of their respective communities.

There should be no difference between the community represented by those selected for jury service in the city and in the county. Whether residents of the city or the county, St. Louisans are now, like it or not, part of the same community. When the current Missouri Constitution was adopted in 1945, the city had a population, as of the 1940 census, of 816,048, while the county's population was 274,230. The county was still largely rural, with several distinct towns. It had been separated from the city for nearly 75 years.[4]

With the passage of 56 years since the 1945 Constitution, the distinctions have blurred. There are now, as of the 2000 census, 1,016,315 persons residing in the county, while the city's 2000 census was 348,189, and continuing to decrease, although the rate of population loss may be slowing.[5] St. Louis County is largely urban, and the boundaries between city and county are hard to discern without the aid of street signs. By the peculiar geography of the St. Louis area, many residents of

---

1. Craig A. Adoor & Joseph J. Simeone, *Law of Venue in Missouri*, 32 St. Louis U. L.J. 639 (1988).

2. In addition to the verdicts and settlements reported each week in the *Missouri Lawyers Weekly*, there are private subscription services that report verdicts from various venues in the state. *See also State ex rel DePaul Health Center v. Mummert*, 870 S.W.2d 820, 821 (Mo. banc 1994).

3. *See, e.g.*, Robert MacCoun, *Inside the Black Box: What Empirical Research Tells Us About Decisionmaking by Civil Juries, in* VERDICT: ASSESSING THE CIVIL JURY SYSTEM 137 (Robert E. Litan ed., 1993).

4. The constitutional recognition of the city first appears in the Missouri Constitution of 1875. The 1945 Missouri Constitution is used as the reference point here to highlight the dramatic population shifts that have occurred since Missouri most recently rewrote its Constitution 56 years ago.

5. These data are from the United States Census Bureau.

the county live closer to downtown St. Louis than to Clayton. More than a few city residents live closer to downtown Clayton than to downtown St. Louis.

The city of St. Louis is recognized as a distinct entity in the Missouri Constitution; article VI, section 31. Visionaries may speak of the benefits of rejoining the city and county for governmental purposes, but governmental fragmentation may be a fact of life not likely to change in the near future. There are, after all, nearly 100 municipalities in the St. Louis city-county area, as well as hundreds of other entities of local government. For many people, that fragmented pattern of governance is functional in keeping governments small and highly localized.

But whatever the benefits and drawbacks to fragmented governance in this metropolitan area, they are wholly unrelated to issues of jury service. As to juries, the goal is a diverse cross-section widely representative of the community at large. To achieve this goal, the laws relating to juries should be changed to eliminate the distinction between city and county jurors by combining the jurors into a single jury pool.

The distinction between city jurors and county jurors has a tendency to skew the jury composition of those separate jurisdictions so as to be unrepresentative of the community at large. The population changes in the city and the county since 1945 give these separate jurisdictions jury pools that appear to be substantially segregated by race and socioeconomic status,

even though the county's population has become more diverse in recent years.

The clearest way to address the problem is to combine the jury pools so that jurors in both the city and county are selected from the same pool of eligible persons.

That would lead not only to a greater representation in the jury pool of the community as a whole, but would also ease the tremendously disproportionate burden carried by the citizens of St. Louis city who are called to jury service. In the year 1999 2000, 26,160 residents of the city appeared for jury service. There were 1,388 jury trial days.[6]

By stark contrast, St. Louis County, with a 2000 census population of 1,016,315, received service from about half the number of prospective jurors as did the city. There were 13,720 county residents who appeared for jury service. St. Louis County compiled 805 total jury trial days in the 1999–2000 fiscal year.

Civil cases in the city accounted for 733 total jury trial days of the 1,388 total, with 655 total jury trial days on criminal cases. In the county, 529 jury trial days were taken up by civil matters, and 276 jury trial days were spent on criminal cases.[7]

The 26,160 persons who appeared for jury service in the city of St. Louis in that year constituted approximately 10.7% of the city's adult (21 and over) population of 242, 835. The age 21 is used because that is when citizens become eligible for jury service under section 494.425. To get that number of prospective jurors, 26,160, to

6. The population figures are from the United States Census Bureau. The data on jury service are from the Office of State Courts Administrator as reported by the respective jurisdictions.

7. Crime is not isolated by the city-county line. Incidence of crime in certain sections of the city may account for a higher caseload of

criminal jury trials in the city, but it is also possible that jury composition may affect the number of cases that defendants choose to have tried. Regardless of where crimes are reported to occur, residents of all parts of the community have an interest in fair disposition of the cases.

appear in that year, 72,228 city residents were summoned—nearly 30 percent of the city's 21–and–over population.

Again by contrast, the 13,720 St. Louis countians who appeared for jury service in that year constituted less than 2% of the county's 21–and–over population of 722,-371.

Combining jury pools in the city and county appears to be a matter of statute for civil juries.[8] As to the criminal case juries, a constitutional change may be needed.[9]

Changes in the law and in the Constitution are not easily achieved. The *status quo* is powerful. But the effort is worth making.[10]

The right of trial by jury—of 12 persons representing the community—is subject to attack.[11] This Court has recently implemented changes in the jury system recommended by a Civil Jury Study Committee in order to make juries more effective and jurors' service more accommodating and meaningful to those who serve.

In contrast to reforms that make jury service more effective and meaningful, the change suggested here is more fundamental and is directed to the viability of the jury trial system. If the jury system and number of cases stay about the same in the city of St. Louis, and the population continues to decrease,[12] the right to trial by jury will be at risk. In order to

**8.** Article V, section 5, relating to the powers of this Court, prohibits court rules that would "change substantive rights, or the law relating to ... juries,...." Article V, section 5. The suggested change presumably involves amendments of chapter 494, relating to juries.

**9.** Article I, section 18(a) of the Missouri Constitution gives the accused in criminal cases the right to "a speedy public trial by an impartial jury of the county." In criminal cases, that refers not to the county of the defendant's residence, which is a reference point for venue in civil cases, but to the county where the crime or some portion of it was committed. Section 541.033, RSMo 2000. Missouri adopted constitutions, following constitutional conventions, in 1820, 1865, 1875, and 1945. These intervals, as well as the demographic, governmental and societal changes that have occurred since 1945, suggest that the state constitution may be due for another updating. However, it may be that Missouri in modern times avoids the constitutional convention as a means of updating the constitution. Piecemeal amendments have become quite common—there have been 237 constitutional amendments since the 1945 constitution.

**10.** The peculiar divide in the St. Louis area does not occur across the state in the other major urban area, Jackson County. Though there are courthouses in Kansas City and in the city of Independence, all jurors are drawn

from a countywide pool, which includes urban dwellers from Kansas City, as well as suburbanites and those who may come from the rural outreaches of Jackson County. The jurors in Jackson County undoubtedly represent to a much greater degree the varied viewpoints of the larger community, rather than being segmented between inner city and suburbia.

**11.** *See, e.g.,* Mark Curriden, *Power of 12,* ABA JOURNAL. August 2001, p. 36. The ABA article previews a symposium on the jury, produced as a collaboration of the *Southern Methodist University Law Review* and the *Dallas Morning News.* Articles of particular pertinence in the forthcoming issue include Victoria A. Farrar–Myers and Jason B. Myers, *Echoes of the Founding: The Jury in Civil Cases as Conferrer of Legitimacy,* 54 SMU L.REV. (forthcoming 2001), and Tom M. Dees, III, *Juries: On the Verge of Extinction? A Discussion of Jury Reform,* 54 SMU L.REV. (forthcoming 2001).

**12.** Missouri's state demographer projects a St. Louis population of slightly less than 300,-000 in the year 2010, and 266,000 in the year 2020. Office of State Demographer, *available at* www.oa.state.mo.us/bp/plngrsr2.htm. The projected decreases in the city's population may not necessarily mean decline. The population of the city may be smaller, but more affluent as less affluent residents continue to move to the county.

get a sufficient number of qualified jurors, a much larger number needs to be summoned. In the city, 72,228 were summoned and 26,160 appeared. These numbers may indicate resistance to jury service—nearly two-thirds of those summoned in the city were excused, ineligible, or simply did not show up. St. Louis County summoned 58,800 and 13,720 appeared. The county's relatively poorer attendance rate—over three-fourths did not appear—may simply reflect a system that more easily excuses prospective jurors than the jury system in the city.

Our jury system is precious. Though its roots are in the Common Law courts of England, its contemporary role is particularly American. It is a fundamental source of legitimacy for the judicial system and a powerful tool to educate the citizens of a democracy.[13] The time and effort that citizens give to this duty ought to be fairly shared in the metropolitan area that includes St. Louis city and county. From the data recited here, it is quite clear that jury service may be disproportionately costly for some of our citizens who reside in the city of St. Louis.

More importantly, juries ought to be drawn from both city and county so that they may more accurately reflect the racial, ethnic, religious, economic, geographic diversity of the entire St. Louis community.[14]

Combining the jury pools of the city and county would eliminate the major reason for venue manipulation in those jurisdictions. Moreover, the privilege and burden of jury service would be more evenly distributed in the St. Louis community, and the right to trial by jury would be more easily preserved.

LAURA DENVIR STITH, Judge, concurring in part and dissenting in part.

I concur in the separate opinions of Judges White and Wolff, and in the portion of the principal opinion that holds that venue does not change when a party is dropped or when a third-party defendant is added. I also write separately to express my disagreement with the principal opinion's conclusion that venue may be redetermined whenever a plaintiff adds another defendant to a case already filed.

Section 508.010, RSMo 2000, is the general venue statute in Missouri. It is entitled "Suits by summons, where brought" and provides that "*Suits instituted* by summons shall, except as otherwise pro-

13. In his 1835 classic, *Democracy in America,* the Frenchman Alexis de Tocqueville described the central position of juries in our society in a way that remains true today, though both genders are today included. The jury, de Tocqueville said:

imbues all classes with a respect for the thing judged and with the notion of right. If these two elements be removed, the love of independence becomes a mere destructive passion. It teaches men to practice equity; every man learns to judge his neighbor as he would himself be judged. And this is especially true of the jury in civil causes; for while the number of persons who have reason to apprehend a criminal prosecution is small, everyone is liable to have a lawsuit. The jury teaches every man

not to recoil before the responsibility of his own actions and impresses him with that manly confidence without which no political virtue can exist. It invests each person with a kind of magistracy; it makes them feel the duties which they are bound to discharge towards society and the part which they take in its government. By obliging men to turn their attention to other affairs than their own, it rubs off that private selfishness which is the rust of society. Alexis de Tocqueville, Democracy in America 285 (Phillip Bradley trans. ed., 1994).

14. *See* Barbara Allen Babcock, *Jury Service and Community Representation, in* Verdict: Assessing The Civil Jury System, *supra* note 4, at 460 et seq.

vided by law, be *brought* ..." (emphasis added). It then sets out where suits shall be brought in any of six different circumstances. The term "suits" refers to "any proceeding by a party or parties against another in a court of law." BLACK'S LAW DICTIONARY 1448 (7th ed.1999). The word "institute" means to "begin or start; commence." *ID.* at 801.

The principal opinion reasons that "[a]lthough a suit is 'brought' against the original defendants when the petition is initially filed, in like manner, it is also 'brought' against subsequent defendants when they are added to the lawsuit by amendment." Op. at 858. It says that the plain language of the statute requires that a court must redetermine venue, if requested to do so, each time plaintiff adds a new defendant to the case.

I respectfully disagree with this reasoning. By the principal opinion's interpretation, the addition of a new defendant is treated as the bringing of a different suit. But, in fact, the addition of the party is taking place within the same suit, already instituted. Neither *State ex rel. DePaul Health Center v. Mummert,* 870 S.W.2d 820 (Mo. banc 1994), nor any other decision of this Court, has previously equated adding a party with filing a new suit. And, as Judge White's analysis of prior decisions demonstrates, no other decision of this Court, until today, has interpreted the language of section 508.010 as if it stated that venue shall be redetermined whenever a claim is added against another defendant, for it does not so state. It states that venue shall be determined when suits initiated by summons are brought—that is, when the *suit* itself is brought.

The legislature's intent to have a single determination of venue at the initiation of the suit is supported by the legislature's interchangeable use of the words "brought," "commenced" and "instituted" in other sections of Chapter 508 dealing with venue. For example, while section 508.010 states that "Suits *instituted* by summons shall ... be *brought*" in a particular venue, section 508.020 states that when a replevin suit is "commenced" it shall be *"brought"* in a certain county. Section 508.060 says where a suit against a county shall be *"commenced."* Thus, the legislature uses the terms brought and commenced interchangeably. The Revisor of Statutes has further intermixed these terms in the statutory titles. While section 508.010 is entitled "Suits by summons, where *brought,"* section 508.020 is entitled "Suits by attachment or replevin, where *commenced,"* and section 508.060 is entitled "Actions against counties, where *instituted."*

In sum, the term "brought" has been equated with "instituted" or "commenced," by the legislature, the Revisor, and even *Black's Law Dictionary,* quoted above. Self-evidently, all these terms are intended to refer to when *suit* is first filed and to establish the proper venue of the action at that time. Had the legislature wanted venue to be redeterminable whenever parties were added, it would have been easy to provide for such a mechanism. The legislature could have entitled section 508.010, for example, "Suit by summons, when brought against particular defendants," and begun that statute with a phrase such as "Venue shall be determined when suit is brought and may be redetermined whenever a plaintiff adds an additional defendant, as follows: ...". It did not, however, choose to write the venue statute in this manner.

The legislature's intent to choose the time suit is brought as the time to determine venue, and not to provide for redetermination of that question as the suit evolves, is thus manifest in the language of

section 508.010 and the other venue statutes. Since the Court so interpreted the venue laws in *DePaul Health Center*, revision to the venue statutes has been proposed in the legislature, but not adopted. The legislature has continued to base venue on when the suit itself was brought. That determination has resulted in predictability, efficiency and stability. Should the legislature at some point decide that addition of any new defendant, or even any new party, should allow a redetermination of venue, then it can adopt a new statute so stating. But, this Court is not permitted to make these choices for it. *Jepson v. Stubbs*, 555 S.W.2d, 307, 313 (Mo. banc 1977) (Court will not rewrite statutes;"[i]f that is be done, it must be by legislative action").

The principal opinion nonetheless suggests that its approach is preferable because it makes venue depend on the residency of defendants, and the legislature's desire to make residency determinative is evident from section 508.010's use of residency as a key factor in determining venue. But, under section 508.010, no particular defendant has a right to have a case venued in the county where he or she resides. For example, when there is only one defendant, venue is still proper in the county where the claim arose; when there are multiple defendants, venue also can be in the county of residence of any one of them even though quite distant from the residence of other defendants. Sec. 508.010.2 and .6.

Moreover, logically, if the legislature's purpose were to give the same "rights" to object to venue to later-named defendants as are given to those sued when suit is first filed, then would not the law also require the courts to redetermine venue when a defendant was dropped, or when a third-party defendant was added? Of course, it does not, and should not. The purpose of the venue statutes is to provide a convenient, logical, and orderly forum for the litigation itself, *DePaul Health Center*, 870 S.W.2d at 822, not just for a particular party. Thus, despite the changes in venue law approved today, the residence of third-party defendants continues to be irrelevant to venue, and the opinion reaffirms the rule set out in *DePaul Health Center* that dropping a defendant does not affect venue.[1]

But, surely, there is little point in referring to a particular defendant's venue rights as a basis for refashioning our venue laws in the manner the principal opinion proposes, when under that approach the redetermination will occur only if it is the plaintiff, not a third-party plaintiff, who adds a new party defendant, when a redetermination can be made regardless of whether the new party is even served, and regardless of the effect of the transfer on those already in a long-pending action. There is also a good deal of elegance to the simplicity of a rule that states that the time of the original filing of the suit is the point the only point—at which venue is to be determined.

1. Op. at 858. The principal opinion acknowledges the long-standing rule, based on *State ex rel. Garrison Wagner Co. v. Schaaf*, 528 S.W.2d 438, 442 (Mo. banc 1975), that the institution of a third-party claim does not affect venue because section 508.010 refers only to "plaintiff" and "defendant," not to third-party defendants. *See also State ex rel. Bitting v. Adolf*, 704 S.W.2d 671, 673 (Mo.

banc 1986); *State ex rel. Missouri Property & Cas. Ins. Guar. Ass'n. v. Brown*, 900 S.W.2d 268, 274–75 (Mo.App. W.D.1995). This rule is relevant here because, were it the legislature's intent that the courts redetermine venue based on the residence of each newly-joined party, then the legislature would also have so provided in the case of third-party defendants.

While the principal opinion never mentions the words "pretensive non-joinder," that is the phrase that defendants in this and other cases have used in arguing that this Court should provide for a reconsideration of venue whenever plaintiff adds a defendant after suit has been filed. "Pretensive non-joinder" is a pejorative term sometimes used to describe the practice of suing only non-resident defendants in the initial petition, thus permitting suit to be brought in a venue in which verdicts are often thought to be high, such as St. Louis City, and then joining resident defendants at a later point by amendment.

There are many who criticize this practice, and many who support it.[2] To the extent that the principal opinion's purpose in changing venue rules is to create a set of rules that are not capable of manipulation in this or another manner, to the advantage or disadvantage of one side or the other, few would disagree with its goal. But, it does so at the cost of rendering venue subject to redetermination in other circumstances, too, through a process that itself can be subjected to manipulation.

Moreover, such a drastic reshaping of Missouri venue law is not necessary to decide *this* case, in which the additional in-state defendants were added before service was even effected on the out-of-state defendant originally sued. If this procedure troubles the Court, it could be resolved simply by holding that when an amended pleading has been filed before service of the original petition, or the filing of the original defendant's answer, then the amended pleading, rather than the original pleading, becomes the basis for determining venue, as that is the pleading which defendant must answer.[3] This simple approach would resolve the issue in this case, and, indeed, in most of the writs filed in this Court that raise the issue of "pretensive non-joinder." Instead, the Court has chosen to go well beyond the facts of this case, and changes venue law for any case in which a defendant is added after suit is filed.

Appellate courts are normally loath to reach out in this manner, for to do so runs the risk of creating new problems when the new rule is applied in situations not then before the Court. That is a matter of concern here. While the principal opinion's approach does avoid some of the difficulties associated with *DePaul Health Center's* simpler, more efficient admonition that venue will be determined when suit is brought, it produces myriad, equally complex and troublesome problems of its own. For example:

1. Assume that a plaintiff had a suit on file in County A for eighteen months against a non-resident and during discovery has learned that another actor may be liable in addition to, or in place of, the original defendants. Or, a plaintiff learns

---

**2.** Those who criticize the practice suggest that it is used to manipulate the intrastate forum of a lawsuit to the disadvantage of defendants. Those who support it suggest that it is no more inappropriate than allowing a defendant to affect venue by choosing where to locate an agent for service of process. They also suggest that, as the venue laws are written and as our cases have interpreted them until today, plaintiffs' "two-step" approach to joining defendants is perfectly permissible, so that a lawyer is merely fulfilling his or her duty as an advocate in filing the client's claim in a venue and in a manner that the lawyer deems to be most favorable, and any desire to change this practice must be addressed to the legislature, not to the courts.

**3.** A similar effect could be achieved by adopting a rule that venue not be determined until one or more defendants are served, but such a rule could itself be subject to manipulation, such as where a defendant learns of the filing of suit prior to service, and moves or relocates its agent for service of process in an attempt to defeat venue.

that a person who plaintiff thought was insolvent and so did not sue originally, has become capable of paying a substantial verdict or has insurance not originally believed to be available. Plaintiff will want to join that new party. But, under the principal opinion's approach, if the original party was not a Missouri resident and the new party is, then plaintiff's original venue choice will be invalidated if the newly joined party moves for a change of venue. Upon motion by any defendant, the judge who has become familiar with the case, the parties, and the issues, will be forced to transfer the case to a new circuit, where the new judge will have to learn these matters all over again. Certainly, this result is not desirable. Yet, it is the result that will occur under the principal opinion's approach.

2. Assume plaintiff originally sued one non-resident defendant. Later, plaintiff adds a local defendant by filing an amended petition, only to dismiss that added defendant before service. As there was no service, the court never gained jurisdiction over the "added" defendant. *Oney v. Pattison*, 747 S.W.2d 137, 141 (Mo. banc 1988). Yet, because venue is determined at the time of filing, not at the time of service,[4] and because, under the principal opinion's approach, amending to name a new defendant now affects venue, but dropping a defendant does not, then that defendant's one-or-two-day presence as an unserved party is determinative of venue. It means that, although a key rationale for adoption of the principal opinion's new venue rule is that a defendant should have a say in determining the venue of a suit in which he or she has been joined, based on his or her residency, venue of the suit may in fact be determined by the residency of a defendant over whom the court never acquired jurisdiction and to whom the convenience of the location of the suit is thus absolutely irrelevant and unimportant.

3. When a defendant, as third-party plaintiff, brings in a third-party defendant, venue is unaffected. *See note 1, supra.* If the plaintiff later amends to make a claim directly against a third-party defendant, as suggested above, has a new action been "brought" and may venue be raised anew with the realignment of the third-party defendant as an ordinary defendant? In the past the answer was clearly no, and under the principal opinion it would remain no, as the third-party defendant is already in the suit, and has been brought there by defendant. But, plaintiff will have to file an amended petition to sue that new party directly, and this is sure to engender yet more litigation over this issue. Indeed, this Court could in the future find plaintiffs in such a case moving for transfer depending on the residence of the third-party brought in by defendant.

4. If the court orders a new party to be joined as a defendant, either as a party to be joined if feasible under Rule 52.04, or as a person permitted to intervene as of right under Rule 52.12(a), is there a new look at venue? One would presume not, for it is well-established that an injured party may choose whom to sue and cannot be forced to sue other alleged tortfeasors. *See, e.g., Krohn v. Redings Mill Fire Dept.,* 893 S.W.2d 399, 400 (Mo.App. S.D.1995). For this reason, the principal opinion speaks only of redetermining venue when a plaintiff chooses to add a new party defendant. But, if the trial court decides that a party must be joined, the court does not actually

**4.** *See, e.g., DePaul Health Ctr.,* 870 S.W.2d at 823; *State ex rel. Schnuck Markets, Inc. v. Koehr,* 859 S.W.2d 696, 698 (Mo. banc 1993) (stating, " 'service' and 'filing' are two differ-

ent and distinct words contemplating two different and distinct acts. We cannot construe one to mean another").

join that party itself, but rather orders plaintiff to do so. Thus, technically, plaintiff will be adding a defendant, and the latter may argue that venue should be subject to redetermination of venue.

5. Cases and statutes dealing with issues other than venue also use the term "brought." [5] How will the principal opinion's new interpretation of that term affect the interpretation of statutes of limitations? Or how the relation-back doctrine is applied? It is likely that this Court will be addressing these and other issues in the years to come, due to the principal opinion's reading of the word "brought" today.

Whether these and the other problems with the approach adopted by the principal opinion are worse than the difficulties that have arisen under the legislature's approach and this Court's prior cases is, of course, a subjective matter about which the members of this Court can, and do, reasonably disagree. But, the existence of these problems highlights the fact that venue is a very complex issue, which requires consideration of competing interests in a wide variety of contexts. This task is better suited to the legislature than to adjudication on a case-by-case basis. That is why the legislature, not the court system, has traditionally balanced the competing policy concerns in this area, and chosen the approach that it finds best serves the public. *See Budding v. SSM Healthcare System,* 19 S.W.3d 678, 682 (Mo. banc 2000) ("when the legislature has spoken on the subject, the courts must defer to its determinations of public policy"). This Court should follow this principle here, and not substitute its judgment for that of the legislature.

For these reasons, I respectfully dissent from so much of the principal opinion as provides that venue shall be redetermined whenever plaintiff adds a defendant.

RONNIE L. WHITE, Judge, dissenting.

I respectfully dissent. The principal opinion concludes that for purposes of venue a suit is "brought" both when an original petition is filed and "re-brought" anytime an additional defendant is added by amendment. The principal opinion sanctions this fluid concept of when a suit is "brought" to achieve its desired end of limiting the forum selection capacity granted to the attorneys of this State by our general assembly.

"Absent a statutory definition, the words used in the statute will be given their plain and ordinary meaning as derived from the dictionary." [1] The word "brought" is the past tense and past participle of "bring." American Heritage's multiple definitions of the word "bring" convey a temporal element that is best summarized by the definition "to give rise to," and its past participle "brought" clearly indicates an event that is "no longer current" or "existed or occurred in an earlier time." [2]

Other dictionaries define the word "bring" as meaning to "advance," "cause,"

---

**5.** *See Cooper v. Minor,* 16 S.W.3d 578 (Mo. banc 2000), *discussing,* sec. 516.145, RSMo 1994 ("Within one year: all actions brought by an offender ...."); sec. 516.103, RSMo 1994 (for actions on penal statutes, the limitations period "shall not be tolled by the filing or pendency of any administrative complaint or action and no such suit may be brought or maintained unless commenced within the time prescribed...."). *See also* sec. 516.105, RSMo 2000 (all actions for medical malprac-

tice "shall be brought within two years ...."); sec. 210.826.2, RSMo 2000 (under the Parentage Act, " an action to determine the existence of the father and child relationship ....may be brought by the child....").

**1.** *State v. Eisenhouer,* 40 S.W.3d 916, 2001 WL 350659 *3 (Mo. banc 2001).

**2.** American Heritage Dictionary 209, 905, and 908 (2nd Col. Ed.1991).

"evoke," "institute," "cause to exist," and "cause to be."[3] All of these definitions convey a point in time, an original point in time. Moreover, citing to the United States Supreme Court in *Goldenberg v. Murphy*,[4] Black's Law Dictionary definitively states, "A suit is 'brought' at the time it is commenced."[5]

While the majority opinion concedes that the word "commenced" is "commonly deemed to be synonymous" with the word "brought," it fails to examine the definition of this interchangeable word. The word "commence" means to "begin," "start," "come into existence," or to "have a beginning."[6] Black's Law Dictionary articulates the legal definition of "commence" as being: "To initiate by performing the first act or step. To begin, institute or start. Civil action in most jurisdictions is commenced by filing a complaint with the court. Fed.R.Civil P.3."[7]

Indeed, Missouri is just such a jurisdiction and recognizes that a civil action is "brought" at the moment of the first step of filing a petition. Rule 53 entitled "Commencement of Civil Action" states, "A civil action is commenced by filing a petition with the court." There is no language in the Court's rules indicating that a civil action is "re-commenced" or "re-brought" upon the filing of an amended petition.

The interpretation that the original filing of a lawsuit is the time in which suit is "brought" or "commenced" finds statutory support in section 506.110 entitled, "How suits may be instituted in courts of record." Section 506.110.2 states, "The filing of a petition in a court of record, or a statement or account before a court not of record, and suing out of process therein, shall be taken and deemed the commencement of a suit." Sections 508.010 and 506.110 are interrelated to the issue of venue, must be considered in "pari materia," and must be read consistently and harmoniously.[8]

The temporal limitation accompanying the word "brought" also finds repetitious support and expansion from this very Court. In *State ex rel. DePaul Health Center v. Mummert,* this Court stated that "venue is determined as the case stands *when brought* ..."[9] The word "when," means "at what time," "at which time," "as soon as," "whenever," and "during the time at which."[10] By adding the word "when" this Court reinforced the temporal limitation already imposed by the word "brought." Thus, a suit is "brought" at which time it comes into existence with the first step of filing the initial petition with the court.

In *DePaul*, this Court was referring to the "original date" the suit was filed when it held that "venue is determined as the case stands when brought."[11] Reference to the original filing is not only articulated by the majority, but is plainly evidenced

3. See Webster's Third International Dictionary 278 (1961); and Black's Law Dictionary 192 (Sixth Ed.1990).

4. 108 U.S. 162, 163, 2 S.Ct. 388, 27 L.Ed. 686 (1883).

5. Black's Law Dictionary 192 (Sixth Ed.1990).

6. American Heritage Dictionary 297 (2nd Col. Ed.1991).

7. Black's Law Dictionary 268 (Sixth Ed.1990).

8. *State ex rel. Rothermich v. Gallagher,* 816 S.W.2d 194, 200 (Mo. banc 1991).

9. *State ex rel. DePaul Health Center v. Mummert,* 870 S.W.2d 820, 823 (Mo. banc 1994).

10. American Heritage Dictionary 1375 (2nd Col. Ed.1991).

11. *DePaul,* 870 S.W.2d at 823.

by the dissent, which states, "The statute [section 508.010] contains no provision, express or implied, that supports the majority's conclusion that challenges to venue must be determined as of the date the suit is originally filed."[12] Despite the obvious contradiction between today's decision and this Court's ruling in *DePaul*, the principal opinion curiously breezes over its previous holding and further ignores *DePaul's* progeny.

The progeny of *DePaul* have not only followed but have expanded this Court's prior and correct reasoning that "brought" refers to the original date of filing the suit. In *State ex rel. Bunker Resource, Recycling and Reclamation, Inc. v. Dierker*,[13] this Court found venue under section 508.070.1 to be analogous to the general venue statute, section 508.010, where venue is determined as the case stands when brought.[14] The Court acknowledged that "brought" had a temporal element of time past when it stated, "The time to measure these three elements is when suit is 'brought' because the second alternative is in the present tense."[15]

In *State ex rel. Breckenridge v. Sweeney*,[16] citing *DePaul*, this Court distinguished venue in terms of the party's residency from the sufficiency of the pleadings. The Court stated, "The statute [section 508.010] requires only that challenges to venue based upon a party's residence must be determined as of the time suit was filed."[17] Again, the relevant time period is when a suit is originally filed, not when amended.

In *State ex rel. Palmer by Palmer v. Goeke*,[18] the court of appeals, following *DePaul*, also determined the original filing or commencement of the suit determined the appropriate venue regardless of the fact that the petitioner changed residence. The court held so even though transfer to a new forum after the change of residence could be more convenient for all of the parties.[19]

Another consideration noted by the *Palmer* court concerned the fact that a second identical action had been filed. The court stated in part:

Also significant to our decision is the fact that Relator's paternity action was filed before Mother's action. As noted earlier, the two actions are identical in substance and subject matter. When two suits are filed relating to a dispute involving the same subject matter between the same parties in two Missouri circuit courts of proper venue and concurrent jurisdiction, the court in which the first petition is filed becomes vested with exclusive jurisdiction over the matter to the exclusion of all other courts.[20]

Today's holding plays legal havoc in this situation. What if a new defendant from a different residence is added after multiple identical suits have been filed and jurisdiction and venue had already "vested" in one forum? Under the principal opinion the suit will have been "re-brought" yet anoth-

---

**12.** *Id.* Note: Judge Robertson was the author of the majority opinion with judges Covington, Holstein, Benton, and Thomas concurring that the original date of filing defined when a suit was "brought." Judges Limbaugh and Price dissenting.

**13.** 955 S.W.2d 931 (Mo. banc 1997).

**14.** *Id.* at 933.

**15.** *Id.* at 932.

**16.** 920 S.W.2d 901, 903 (Mo. banc 1996).

**17.** *Id.*

**18.** 8 S.W.3d 193, 195 (Mo.App.1999).

**19.** *Id.*

**20.** *Id.*

er time subjecting the parties to relocate to a new forum contrary to this bright-line rule.

Other decisions citing *DePaul* for determining venue at the time a suit was originally filed include:

*Bellon Wrecking & Salvage Co. v. David Orf, Inc.,* 983 S.W.2d 541, 547 (Mo.App. 1998) (venue for confirmation of arbitration award was proper in court where original action filed).

*Threats v. General Motors Corp.,* 890 S.W.2d 327, 329 (Mo.App.1994) (venue remained proper for this action despite the dismissal of one defendant as venue was apparently proper under section 508.010(2) when the suit was brought).

*State ex rel. Sims v. Sanders,* 886 S.W.2d 718, 719, fn. 1 (Mo.App.1994) (citing *DePaul,* Relator concedes that residence for venue purposes is determined at the time suit is filed and not affected by a subsequent change in residence).

*State ex rel. Santoya v. Edwards,* 879 S.W.2d 775, 776-77 (Mo.App.1994) (venue remained proper despite the dismissal of one defendant as venue was proper under section 508.010 when the suit was brought).

Either the majority has overruled these cases sub silentio, or the opinion produces the incongruous result that the word "brought" is capable of two simultaneous meanings in its singular use in section 508.010. The word "brought," with its fixed temporal element, can have only one meaning and interpretation as used in section 508.010 that must apply in all instances when determining the appropriate venue. In contradiction with our prior decisions, applying today's holding redefining the word "brought" creates the situation where a court would have to grant a motion to change venue anytime a petition was amended reflecting any changes in relation to the parties as the suit will have been "re-brought."

Besides the tenets of statutory construction, the Court's rules, and Missouri case precedent, all of which support the interpretation that suit is "brought" at the time of original filing, there is additional support by way of analogy to the interpretation of federal venue law. The federal courts have consistently held that venue, under 28 U.S.C. section 1391, "is determined at the time the complaint is filed and is not affected by a subsequent change of parties."[21] It is not unreasonable to assume that our legislature wished to mirror federal venue law when drafting section 508.010. While 28 U.S.C. section 1391(a) uses the word "commence" as opposed to "brought," as previously noted the majority concedes these two words are synonymous, and the federal courts consistently equate these two terms.[22]

Even disavowing this comparison and overruling all of the existing Missouri case precedent interpreting section 508.010 would be insufficient to justify the principal opinion's revised interpretation of Missouri's venue statute, because in reaching

---

21. *Horihan v. Hartford Ins. Co. of the Midwest, et al.,* 979 F.Supp. 1073, 1076 (E.D.Tex. 1997) (citing to Sidco Indus., Inc. v. Wimar Tahoe Corp., 768 F.Supp. 1343, 1346 (D.Or. 1991)); Exxon Corp. v. F.T.C., 588 F.2d 895, 899 (3rd Cir.1978); Concord Labs, Inc., v. Ballard Medical Products, 701 F.Supp. 272, 277 (D.N.H.1988); Proler Steel Corp. v. Luria Bros. Co., 225 F.Supp. 412, 413 (S.D.Tex. 1964). See also Nutrition Physiology Corp. v. Enviros Ltd., 87 F.Supp.2d 648 (N.D.Tex. 2000); 28 U.S.C. section 1391(a)(1).

22. *Goldenberg,* 108 U.S. at 163, 2 S.Ct. 388; most currently cited in *Harris v. Garner,* 216 F.3d 970, 974 (11th Cir.2000).

this decision the opinion violates the basic tenets of statutory construction. "Where the language of the statute is unambiguous, courts must give effect to the language used by the legislature."[23] Courts may not "read into a statute a legislative intent contrary to the intent made evident by the plain language."[24] "There is no room for construction even when the court may prefer a policy different from that enunciated by the legislature."[25] While the principal opinion acknowledges its duty to consider the plain and ordinary meaning of the statute's words, it then denies the existence of the temporal component of the word "brought" which appears in each definition, connotation, and usage of this word.

The majority opinion is contrary to the rules of statutory construction, the rules of the court, and the prior case precedent set by this very Court. The principal opinion's holding today eliminates the bright line rule concerning venue and offers in replacement a never-ending and unpredictable tide leaving the parties only to guess as to which courthouse door they ultimately will be washed ashore.

**23.** *State v. Burns,* 978 S.W.2d 759, 761 (Mo. banc 1998). See also *Keeney v. Hereford Concrete Prods., Inc.,* 911 S.W.2d 622, 624 (Mo. banc 1995).

**24.** *Keeney v. Hereford Concrete Prods., Inc.,* 911 S.W.2d 622, 624 (Mo. banc 1995).

