STATE ex rel. WYETH a/k/a Wyeth, Inc., et al., Relators,

v.

The Honorable Thomas C. GRADY, Respondent.

No. SC 88275.

Supreme Court of Missouri, En Banc.

Aug. 26, 2008.

Harvey L. Kaplan, Angela M. Seaton, Julie R. Somora, Shook Hardy Bacon, LLP, Kansas City, J. William Newbold, James R. Erwin, Christopher M. Hohn, Thompson Coburn, LLP, Mark A. Kinzie, Ryan G. Vacca, Stinson, Morrison Hecker, LLP, Teresa D. Batosiak, Sandberg, Phoenix, von Gontard, PC, Greg L. Dioneda, Moser and Marsalek, P.C., St. Louis, Steven Glickstein, Maris Veidemanis, Kaye Scholer, LLP, New York, NY, Matthew V. Brammer, Traci Wallace, Ulmer & Berne LLP, Cincinnati, OH, Matthew Liebsen, Thompson Hine, LLP, Cleveland, OH, Carolyn Taylor, Morris, Polich & Purdy, LLP, San Diego, CA, for Relators.

D. Brian Ratliff, Gregory J. Bubalo, Steven B. Rotman, Bubalo Hiestand & Rotman, P.C., Louisville, KY, John J. Driscoll,

Seth S. Webb, Brown & Crouppen, St. Louis, Stephanie L. Lyons, Timothy F. Thompson, Jr., Simmonscooper, LLC, East Alton, IL, for Respondent.

## ORIGINAL PROCEEDING OF PROHIBITION

PATRICIA BRECKENRIDGE, Judge.

Relators, comprised of Wyeth and various other pharmaceutical companies, seek a writ of prohibition to prevent the trial court from denying their motions to dismiss claims pending against them on *forum non conveniens* grounds. Specifically, they claim that the trial court abused its discretion in denying their motions to dismiss because all the relevant factors in the *forum non conveniens* analysis favor dismissal. While many of the relevant factors weigh in favor of applying the doctrine of *forum non conveniens*, not all weigh in their favor. In particular, the pharmaceutical companies fail to show that other courts are available to the plaintiffs and that trying the cases in Missouri would be oppressive to the pharmaceutical companies or impose an undue burden on Missouri courts. This Court's preliminary writ of prohibition is quashed.

### Factual and Procedural Background

Plaintiffs filed suit on July 7, 2004, in the Circuit Court of the City of St. Louis for injuries allegedly caused by their ingestion of prescription hormone therapy drugs manufactured by Wyeth and other pharmaceutical companies. The original petition was filed on behalf of 186 plaintiffs, who were women who had taken the drugs and their husbands or representatives of the estates of deceased hormone therapy users. Twenty-one of the original plain-

tiffs were Missouri residents. There were 34 defendants, who were manufacturers of the hormone therapy drugs and pharmacies that allegedly sold the drugs. The case was removed to federal court but then remanded to the state trial court. At the request of the pharmaceutical companies, the trial court subsequently severed the claims of the individual plaintiffs and, in response to the pharmaceutical companies' motion to dismiss, granted plaintiffs leave to file amended complaints. One of the grounds in the motion to dismiss was the doctrine of *forum non conveniens,* which the trial court overruled. The pharmaceutical companies then removed the majority of the cases, including the cases of all Missouri-resident plaintiffs, to federal court in Arkansas.[1] Only eleven non-diverse claims remained in St. Louis City. Missouri retains jurisdiction over the claims because the pharmaceutical companies conduct substantial and continuous business in the state. *See State ex rel. K–Mart Corp. v. Holliger,* 986 S.W.2d 165, 166–69 (Mo. banc 1999).

The pharmaceutical companies then filed motions to dismiss ten of the remaining claims on *forum non conveniens* grounds. In support of their motions, the companies attached exhibits. No hearing was held on the motions. On November 2, 2006, in ten separate orders, the trial court overruled the companies' motions to dismiss. In its order in each case, the trial court listed the considerations to weigh in the *forum non conveniens* analysis and then wrote:

Here, the Court notes that this action has been pending for over two years and that substantial discovery has already been performed. The lawsuit was originally filed on July 7, 2004 and joined the claims of multiple plaintiffs, all of whom

---

1. Federal hormone therapy cases are consolidated in a multidistrict litigation proceeding in the United States District Court for the Eastern District of Arkansas. *See In re Prempro Products Liability Litigation,* 254 F.Supp.2d 1366 (J.P.M.L.2003).

claimed they were injured as a result of taking hormone therapy drugs. The case was then removed to federal court and subsequently remanded back to this Court. On August 24, 2005, the Court ordered the cases severed. Pursuant to the Court's ruling, a new Amended Complaint was filed on behalf of each of the individual plaintiffs.

The Court further notes that Defendants do a substantial amount of business within the State of Missouri, marketing and distributing their products to Missouri residents. The Court also does not believe an undue burden on this Circuit will be created by the prosecution of this case in the City of St. Louis.

Considering all of these matters together with the knowledge that the doctrine of forum non conveniens is to be applied with caution and only upon a clear showing of inconvenience and when the ends of justice require it, the Court finds that Defendants' Motion to Dismiss Based on Forum Non Conveniens should be overruled.

The pharmaceutical companies claim that they are entitled to an order prohibiting the trial court from taking any further action in these cases, other than dismissing the cases on *forum non conveniens* grounds, because the trial court abused its discretion in overruling their motions to dismiss. Specifically, the companies assert that all the factors relevant to determining whether a forum is inconvenient weigh heavily in their favor.

### Standard of Review

■ Because the question of whether to dismiss a case for inconvenient forum requires the court to weigh multiple factors the decision is left largely to the trial court's discretion. *Besse v. Missouri Pacific R. Co.*, 721 S.W.2d 740, 742 (Mo. banc 1986). Although the trial court's discre-

tion is broad, it is not unlimited. *Id.* at 743. "[D]iscretion is not the equivalent of whim; discretion must be applied with control." *Anglim v. Missouri Pacific R. Co.*, 832 S.W.2d 298, 303 (Mo. banc 1992). The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Id.* Further, if reasonable persons may differ as to the propriety of an action taken by the trial court, then it cannot be held that the trial court has abused its discretion. *Id.* On appeal, "only those facts will be considered that were before the trial court when it ruled on the motion to dismiss, and the evidence will be viewed in a light favorable to the result of the trial court." *Id.*

### Writ of Prohibition is an Appropriate Remedy

■ "Prohibition is a discretionary writ, and there is no right to have the writ issued." *State ex rel. Linthicum v. Calvin*, 57 S.W.3d 855, 857 (Mo. banc 2001). A writ of prohibition will issue to prevent an abuse of discretion, irreparable harm to a party, or an extra-jurisdictional act and may be appropriate to prevent unnecessary, inconvenient, and expensive litigation. *Id.* This Court has stated expressly that "a petition for writ of prohibition may be a proper means of obtaining relief from an order denying dismissal on *forum non conveniens* grounds." *Holliger*, 986 S.W.2d at 169. Although a writ of prohibition may be an appropriate remedy, "the discretionary nature of the trial court's order portends that a writ rarely will be granted." *Id.*

### The *Forum Non Conveniens* Doctrine

■ Although a plaintiff has the right to choose any forum where there is proper

jurisdiction and venue in which to file the plaintiff's cause of action, the doctrine of *forum non conveniens* was developed to prevent a plaintiff from taking advantage of liberal venue statutes to "vex, oppress, or harass" a defendant by bringing suit in a forum that had no connection to the parties or the cause of action. *Anglim v. Mo. Pacific R. Co.*, 832 S.W.2d 298, 302 (Mo. banc 1992). The doctrine allows, and in some circumstances requires, the trial court to dismiss a suit if it is filed in a "manifestly inconvenient" forum. *Besse*, 721 S.W.2d at 742.

In *State ex rel. Chicago, R.I. & P.R. Co. v. Riederer*, this Court listed six important, but non-exclusive, factors for the trial court to weigh in determining whether a suit should be dismissed on the grounds of inconvenient forum. 454 S.W.2d 36, 39 (Mo. banc 1970). Those six factors are: (1) the place where the cause of action accrued, (2) the location of witnesses, (3) the residence of the parties, (4) any nexus with the place of suit, (5) the public factor of the convenience to and burden on the court, and (6) the availability to the plaintiff of another court with jurisdiction over the cause of action that affords him a forum for his remedy. *Id.* Any additional factors to be considered and the weight assigned to each factor are dependent upon the circumstances in each case. *Anglim*, 832 S.W.2d at 303. "[A] plaintiff's choice of forum is not to be disturbed except for 'weighty reasons' and the case should be dismissed only if the 'balance is strongly in favor' of the defendant." *Id.* at 302 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)).

In addition to analyzing whether the six factors listed above weigh heavily in the companies' favor, it is also necessary to determine whether permitting the trial to proceed in Missouri would cause an injustice due to oppression of the defendant or undue burden on the court. Plaintiffs assert that this consideration is a second prong in the analysis that the companies fail to satisfy. The impression that the *forum non conveniens* analysis includes a second prong appears to be the result of the following passage from this Court's opinion in *Anglim*:

> In the context of an appeal from an order overruling a motion to dismiss based on a claim of inconvenient forum, the decision of the trial court is not to be disturbed unless the appellate court is firmly convinced of two propositions. First, the appellate court must be convinced that the relevant factors weigh heavily in favor of applying the doctrine of *forum non conveniens*. Second, the court must be convinced that permitting the case to be tried in Missouri would lead to an injustice because such trial would be oppressive to the defendant or impose an undue burden on Missouri courts.

832 S.W.2d at 303. Further, subsequent *forum non conveniens* cases, citing *Anglim*, appear to apply a two-part test. *See Holliger*, 986 S.W.2d at 169; *State ex rel. Ford Motor Co. v. Westbrooke*, 12 S.W.3d 386, 392 (Mo.App.2000).

The analysis is the same whether *Anglim* creates a "second prong" to the *forum non conveniens* analysis or is, instead, simply the recognition that there are two primary considerations in the *forum non conveniens* analysis. In determining whether the forum is inconvenient, courts shall consider both the private interests of the litigants and the public interest factors. *Gulf Oil Corp.*, 330 U.S. at 508–09, 67 S.Ct. 839. The six non-exclusive factors identified in *Riederer* must first be considered as to whether they weigh heavily in favor of applying the doctrine and then as to whether trial in Mis-

souri would be oppressive to the defendants and an undue burden on Missouri courts.

■ Applying the first factor to the facts of the cases here, none of the plaintiffs' causes of action accrued in Missouri. The women were prescribed hormone therapy, purchased and ingested the drugs, and were injured in northeastern states, not Missouri. Further, in most of the cases, the medications were ingested in the plaintiffs' home states. This factor weighs in favor of dismissal.

The second *Riederer* factor is the location of witnesses. Here, it is undisputed that no potential witnesses are located in Missouri and that the witnesses would be outside the circuit court's subpoena power. The significance of this fact in assessing the inconvenience of trial in Missouri is not shown, however, because the pharmaceutical companies do not identify any actual witness, the location of any witness, or even the number of witnesses anticipated. Instead, the companies simply assert that all doctors, nurses, family, friends, co-workers, and other observers live in each plaintiff's home state. Beyond the general allegations regarding plaintiffs' witnesses, the pharmaceutical companies did not provide the identity or location of any defense witness. "On this, as on other factual matters, the moving party has the initial burden of establishing the relative inconvenience caused by the witnesses' location." *Id.* at 304. While some inconvenience is apparent from non-resident witnesses, the pharmaceutical companies did not provide the trial court with sufficient evidence to quantify that inconvenience.

The third factor is residence of the parties. It is undisputed that no party in these suits is a Missouri resident. All the plaintiffs are residents of one of four northeastern states: Delaware, New Jersey, New York, and Pennsylvania. None of the defendant pharmaceutical companies is incorporated or headquartered in Missouri. All but two of the pharmaceutical companies are Delaware corporations; Qualitest Pharmaceuticals, Inc., is an Alabama corporation, and Solvay Pharmaceuticals, Inc., is a Georgia corporation. Four of the corporate headquarters are located in New York, two in Michigan, one in Alabama, one in Delaware, one in Georgia, one in New Jersey, and one in Pennsylvania. Again, while some inconvenience is apparent, these facts are insufficient to quantify the inconvenience to the companies caused by plaintiffs' and defendants' nonresidence. "A corporation may be created under the laws of one state, have its headquarters in another state, and do its primary business in yet one or more other states." *Id.*

The fourth factor is whether there is any nexus between the lawsuit and the place suit is brought. Here, there is no apparent nexus between these particular cases and Missouri. There is a nexus between the pharmaceutical companies and Missouri, however. All of the companies do a substantial amount of business in Missouri, marketing and distributing their products to Missouri residents. The companies operate all over the country with different states of incorporation and headquarters. Although the companies argue that a trial in St. Louis "would require everyone to travel great distances and incur the expenses associated with an out-of-town trial," it is likely that any forum available would be equally inconvenient to the companies. The forums where the plaintiffs are residents are not necessarily forums where the companies are residents, so there still would be a need for travel and the resulting expenses. As such, the weight of this factor in determining whether trial in Missouri would be oppressive to

defendant pharmaceutical companies is limited.

The fifth *Riederer* factor is the public factor of convenience to and burden on the court. The defendant pharmaceutical companies argue that these are complex cases that would take two to four weeks to try and would involve the application of the laws of other states. They further argue that, in 1998–2003, the 22nd Circuit ranked at the top of the circuits in numbers of complex civil cases filed per judge, total number of jury trials and highest number of jury-trial days. The trial court, however, specifically found that prosecution of the cases in St. Louis City would not overburden the court. "[T]he trial court may take notice of the congestion of its own docket." *Anglim*, 832 S.W.2d at 304. This Court will not find that the statistics offered by the defendant pharmaceutical companies prevail over the trial court's assessment of the impact of the cases on the court's docket, based on the evidence before the trial court when the ruling was made.

Finally, with respect to the sixth factor—the availability of another court with jurisdiction affording a forum for a plaintiff's remedy—the defendant pharmaceutical companies assert that the "courts of plaintiffs' home state[s] are perfectly capable of handling plaintiffs' product liability claims." They point to other hormone therapy cases pending in the plaintiffs' home states that are subject to "coordinated proceedings" as grounds for finding that there is another court with jurisdiction available. Such general assertions are not sufficient. Whether another forum was initially available where plaintiffs could have filed their original claims is not what the sixth factor concerns. The issue to be considered by the trial court is whether each plaintiff would have a forum available, at this time, where he or she could proceed with the lawsuits in the event the current suits are dismissed. Only in this Court, in response to plaintiffs' claim that there may be bars to them filing suit in other states, such as statutes of limitation, do the pharmaceutical companies offer to waive assertion of a statute of limitations defense for the period each case was pending in Missouri.

The defendant companies argue that if these suits are permitted to proceed because the companies do some business in Missouri, it would open Pandora's Box, allowing any plaintiff to sue any company that does business in Missouri to the detriment of Missouri's court system and its jurors. Plaintiffs argue that the court's jurisdiction over their suits is not oppressive to the pharmaceutical companies and does not impose an undue burden on the court and, therefore, Missouri is not an inconvenient forum. This Court agrees that the companies have not shown that the trial court abused its discretion in overruling their motions to dismiss on grounds of *forum non conveniens*.

Plaintiffs' original petition filed in the trial court included 186 plaintiffs, 21 of whom were Missouri residents. The petition, as initially filed, would have withstood a *forum non conveniens* challenge because of the Missouri plaintiffs. During the years since the case was filed, the pharmaceutical companies removed the entire case to federal court, which later remanded it. The companies then obtained the severance of the plaintiffs' claims and chose to remove all but eleven plaintiffs to federal court on diversity grounds. Only then were the remaining plaintiffs vulnerable to a *forum non conveniens* challenge.

The defendant pharmaceutical companies have the potential for gaining additional advantages, beyond having a more convenient forum, if their renewed motions to dismiss for *forum non conveniens* are

sustained. For example, the companies renewed their motions to dismiss after receiving unfavorable rulings on issues such as whether plaintiffs' claims were barred by the statute of limitations, and their proposed waiver of a statute of limitations defense was merely an offer to toll the statute of limitations while the Missouri cases were pending.

In analyzing the relevant factors, the defendant pharmaceutical companies argue that Missouri is an inconvenient forum, primarily because plaintiffs' witnesses do not reside in Missouri and the parties would have to travel great distances and incur expenses. In so arguing, the companies have not presented factual information about the nature of that inconvenience. And, as noted earlier, the companies failed to prove that it is of great inconvenience or burden on them to try the cases in Missouri because there was a lack of evidence as to where the companies have their principal places of business, the evidence showed that the companies are headquartered in many different states, and, if plaintiffs' suits are dismissed, the companies would be required to try the cases in the multiple states where the plaintiffs reside. The defendant pharmaceutical companies have not shown that the plaintiffs' filing and maintenance of the suits in Missouri was for the purpose of vexing, oppressing or harassing the companies, which the doctrine of *forum non conveniens* is intended to prevent. *Anglim,* 832 S.W.2d at 302. Finally, the statistics offered by the companies do not compel a finding that trying the cases in the Circuit Court of the City of St. Louis would overburden the court.

### Conclusion

Under the special facts of this case, the trial court did not abuse its discretion in failing to dismiss the lawsuits on the grounds that Missouri is an inconvenient forum. The relevant *forum non conveniens* factors do not weigh heavily in favor of dismissal, and the defendant pharmaceutical companies fail to show that permitting the cases to be tried in Missouri would lead to an injustice because the trials would be oppressive to defendants or would impose an undue burden on Missouri courts. The trial court, therefore, did not abuse its discretion in failing to dismiss the lawsuits on the grounds that Missouri is an inconvenient forum. This Court's preliminary writ is quashed.

PRICE, RUSSELL and WOLFF, JJ., concur.

CLARK, Sr.J., concurs in separate opinion filed.

TEITELMAN, J., concurs in opinion of CLARK, Sr.J.

STITH, C.J., not participating.

THOMAS C. CLARK, Senior Judge, concurring.

After deliberation of the facts and consideration of long established legal precedent, this Court holds that the preliminary writ of prohibition issued for reasons of *forum non conveniens* should be and is hereby quashed. Therefore, the circuit court of the City of St. Louis may proceed to adjudicate these cases.

The saga of hormone replacement therapy litigation continues. A multitude of cases were filed in the St. Louis City Circuit Court against national pharmaceutical companies in July, 2006. Chapter Two opened with the defendant companies seeking removal to federal court from the St. Louis City Circuit Court.

All but eleven of these cases involving hormone replacement therapy were rerouted to the multi-district litigation in Arkansas, thereby ending Chapter Two.

In Chapter Three, the remaining eleven hormone replacement therapy cases were returned by the federal district court in St. Louis to the St. Louis City Circuit Court for adjudication.

As Chapter Four opened, the defendants requested the Hon. Thomas C. Grady, presiding judge of the St. Louis City Circuit Court, to exercise his discretion and decline jurisdiction in ten of the hormone replacement therapy cases on the basis of *forum non conveniens*.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

In *forum non conveniens*, the trial judge has personal and subject matter jurisdiction, which in layman terms means that the trial court has the legal authority to proceed. *Anglim* succinctly defined *forum non conveniens:*

> The doctrine of *forum non conveniens* provides that notwithstanding proper jurisdiction and venue by letter of the statute, a trial judge has discretion to not exercise jurisdiction if the forum is seriously inconvenient for the trial of the action involved and if a more appropriate forum is available to the plaintiff.[2]

Thus, the doctrine of *forum non conveniens* grants the trial judge the discretion to examine the facts of the case and to decline to proceed "if the forum is seriously inconvenient . . . and if a more appropriate forum is available to the plaintiff." [3]

However, the trial court is directed to proceed cautiously, with restraint.

> But a plaintiff's choice of forum is not to be disturbed except for "weighty reasons" and the case should be dismissed only the "balance is strongly in favor" of the defendant.[4]

Judge Grady did so, examined the ten cases, considered the facts and the law, then issued ten separate but explanatory orders telling why the trial court would not exercise its discretion to dismiss these cases. Instead, the court would do its duty and continue to adjudicate the hormone replacement therapy cases.[5] This ended Chapter Four.

In Chapter Five, the defendants challenged Judge Grady's considered opinions and requested that the Missouri Court of Appeals, Eastern District, prohibit Judge Grady from proceeding with these cases, based upon *forum non conveniens* considerations.

A preliminary writ was issued, but after consideration, that court quashed its writ, thereby allowing Judge Grady to adjudicate these cases in Chapter Six.

## WRIT OF PROHIBITION vs. TRIAL COURT DISCRETION

But defendants continue their authorship of this saga in Chapter Six, this time requesting that this Court prohibit Judge Grady from proceeding based upon *forum non conveniens* considerations. By this decision, this Court must address and de-

---

1. One case remained with the St. Louis City Circuit Court.

2. *Anglim v. Missouri Pacific R.R. Co.*, 832 S.W.2d 298, 302 (Mo. banc 1992); citing *Restatement (Second) of Conflicts of Laws* sec. 84 (1971); *State ex rel. Ford Motor Company v. Westbrooke*, 12 S.W.3d 386, 392 (Mo.App. 2000); *State ex rel. The Kansas City Southern Railway Company v. Mauer*, 998 S.W.2d 185, 188 (Mo.App.1999); *State ex rel. K–Mart Cor-*

*poration v. Holliger*, 986 S.W.2d 165, 169 (Mo. banc 1999).

3. *Anglim*, 832 S.W.2d at 302; *Westbrooke*, 12 S.W.3d at 392.

4. *Anglim*, 832 S.W.2d at 302.

5. These orders are published in the Index portion of the appellate court filing.

cide two fundamental concepts in the administration of justice, appellate court deference to discretionary rulings by the trial court and, possibly for the first time, this Court's interlocutory imposition of *forum non conveniens* despite rejection by the trial court.[6]

Despite its long-standing history of respecting discretionary orders of *forum non conveniens* motions by trial judges, this Court, a court of review and a court of error, is requested to embark on an early course of active involvement in *forum non conveniens* litigation that most certainly invites more writ filings and usurps trial court discretion and case management.

## *RIEDERER* FACTORS APPLICABLE TO *FORUM NON CONVENIENS*

These issues, trial court discretion and this Court's interlocutory application of *forum non conveniens,* are intertwined. Traditionally, the judicial system allows the plaintiff to select the forum by filing suit.[7] Plaintiff's selection is not absolute, but rather is subject to convenience considerations by the trial court, which must weigh relevant factors including, but not limited to, those set out by *Riederer.*[8] The basic factors to be weighed in any case and from which a determination is made whether a case should be dismissed on the basis of *forum non conveniens* are:

(1) place of accrual of the cause of action,

(2) location of witnesses,

(3) the residence of the parties,

(4) any nexus with the place of suit,

(5) the public factor of the convenience to and burden upon the court, and

(6) the availability to plaintiff of another court with jurisdiction of the cause of action affording a forum for plaintiff's remedy.[9]

But, first consider the reverence with which past appellate courts have respected trial court discretion in deciding *forum non conveniens* issues.[10]

---

**6.** *Mauer,* 998 S.W.2d at 191.

**7.** *Besse v. Missouri Pacific R.R. Co.,* 721 S.W.2d 740, 742 (Mo. banc 1986).

**8.** *State ex. rel. Chicago, Rock Island & Pacific R.R. Co. v. Riederer,* 454 S.W.2d 36, 39 (Mo. banc 1970); *Anglim,* 832 S.W.2d at 302; *Mauer,* 998 S.W.2d at 188, 191. For instance, in *Mauer* "the trial court judges were entitled to consider, and rely upon, plaintiffs' representations that plaintiffs would pay the cost of transporting certain witnesses to Jackson County for the purpose of trial or depositions, and that plaintiffs would agree to undergo an independent medical examination in Jackson County. [The court relied] upon plaintiffs' representations in this regard. [And] [a]ccordingly, while [it did] not believe corporate residence is the sole determinative factor, and while [it believed] the trial judges could properly have dismissed this action on grounds of *forum non conveniens,* [it declined] ... to take the extraordinary measure of directing the trial court to dismiss the action."

**9.** *Riederer,* 454 S.W.2d at 39; *Anglim,* 832 S.W.2d at 303; *Westbrooke,* 12 S.W.3d at 392; *Mauer,* 998 S.W.2d at 188–89; and *Holliger,* 986 S.W.2d at 169.

**10.** *See Anglim,* 832 S.W.2d at 303 ("Because the application of the doctrine of *forum non conveniens* is fact intensive and the weight to be accorded any factor is dependent on the circumstances, trial court discretion is essential."); *Besse,* 721 S.W.2d at 742 ("The decision on the question of dismissal for inconvenient forum involves a weighing of the factors set out in *Riederer.* For this reason, the decision is one which is largely committed to the discretion of the trial court."); *Westbrooke,* 12 S.W.3d at 394 ("We recognize that cases such as the instant one may be legitimate candidates for the application of *forum non conveniens* upon a proper showing. In this regard, we note, however, that consideration of such motions is fact intensive and the weight to be accorded any factor is dependent on the circumstances, with the result that such motions are pri-

Additionally, the appellate courts have honored the trial court's exercise of discretion in *forum non conveniens* by presuming the exercise of discretion is correct, confining its inquiry to the facts known to the trial court and imposing upon the petitioner the burden of showing the abuse of discretion.[11]

*Besse* emphatically held that "our writs are issued grudgingly, and not to correct discretionary rulings,"[12] adding that these matters could be reviewed and corrected on appeal.[13] Since *Besse*, however, appellate courts have expressed their support of trial court discretion in *forum non conveniens* cases, but with limitation. First, reemphasizing its support for trial court

discretion, this Court stressed that "the general rule is that, if a court is entitled to exercise discretion in the matter before it, a writ of prohibition cannot prevent or control the manner of its exercise, so long as the exercise is within the jurisdiction of the court."[14] In the same breath, this Court set the limitation on trial court discretion, holding "[H]owever, if abuse of that discretion is so great as to be an act in excess of jurisdiction and is such as to create injury which cannot be remedied on appeal, prohibition may be appropriate."[15]

Thus, against this long history of supporting trial court discretion on *forum non conveniens* cases, in order to support the issuance of this extraordinary writ of pro-

marily for the trial court's discretion."); *Mauer*, 998 S.W.2d at 188 ("Because of the broad discretion allowed trial judges on matters of *forum non conveniens*, relief is not often granted."); *Holliger*, 986 S.W.2d at 169 ("Exercise of this doctrine is within the discretion of the trial court.").

11. *Anglim*, 832 S.W.2d at 303 ("On appeal, in determining whether the trial court's ruling amounted to an abuse of discretion, only those facts will be considered that were before the trial court when it ruled on the motion to dismiss, and the evidence will be viewed in a light favorable to the result of the trial court. Also on appeal, discretionary rulings are presumed correct, and the appellant bears the burden of showing an abuse of discretion."); *Westbrooke*, 12 S.W.3d at 391 ("In a prohibition proceeding the burden is on the petitioning party to show that the trial court exceeded its jurisdiction, and that burden includes overcoming the presumption of right action in favor of the trial court's ruling."); *Westbrooke*, 12 S.W.3d at 392 ("Discretionary rulings such as a ruling on a motion to dismiss for *forum non conveniens* are presumed correct, and the party contesting that ruling bears the burden of showing an abuse of discretion."); *Mauer*, 998 S.W.2d at 188 ("We presume that discretionary rulings are correct. The burden is on Kansas City Southern to show an abuse of discretion.").

12. *Besse*, 721 S.W.2d at 742.

13. *Id.* at 743; *State ex rel. McCulloch v. Schiff*, 852 S.W.2d 392 (Mo.App.1993); *Mauer*, 998 S.W.2d at 188; *Holliger*, 986 S.W.2d at 169.

14. *Holliger*, 986 S.W.2d at 169; *Westbrooke*, 12 S.W.3d at 392 ("The general rule is that as to a matter about which the court is entitled to exercise discretion, prohibition cannot prevent or control the manner of its exercise, so long as the exercise is within the jurisdiction of the court."); *Mauer*, 998 S.W.2d at 188 ("[I]f a court is entitled to exercise discretion in the matter before it, a writ of prohibition cannot prevent or control the manner of its exercise, so long as the exercise is within the jurisdiction of the court.").

15. *Holliger*, 986 S.W.2d at 169; *Westbrooke*, 12 S.W.3d at 392 ("However, if abuse of that discretion is so great as to be an act in excess of jurisdiction and is such as to create injury which cannot be remedied on appeal, prohibition may be appropriate."); *Mauer*, 998 S.W.2d at 188 ("Nonetheless, prohibition may be appropriate for an abuse of discretion that is so great that it constitutes an act in excess of jurisdiction and creates an injury that cannot be remedied on appeal."). *But see Anglim*, 832 S.W.2d at 303 ("Judicial discretion is abused when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration . . .").

hibition, this Court must analyze and conclude that Judge Grady *exceeded* his jurisdiction by declining to *act*; i.e., declining to dismiss these cases pursuant to *forum non conveniens.*

Continuing, this Court must also evaluate Judge Grady's ruling against those legal standards that govern *forum non conveniens* decisions. In *Holliger,* this Court ruled,

> [D]enial of a motion to dismiss on the grounds of *forum non conveniens* should not be disturbed unless the relevant factors weigh heavily in favor of applying the doctrine and litigating the case in Missouri would lead to an injustice because such trial would be oppressive to the defendant or would impose undue burden on the Missouri courts.[16]

Since *forum non conveniens* decisions are "fact intensive" and the weight to be afforded any factor is dependent on the circumstances,[17] a detailed recitation of the interaction between the facts of these cases and those relevant *forum non conveniens* factors is essential and follows.

Of greatest moment in this inquiry is the "nexus" factor. Webster's unabridged dictionary has multiple definitions, to-wit; connection or interconnection; tie; link or a connected group or series.[18]

Therefore, the logical question is simply whether there is a "nexus" connection between Missouri[19] as a state and this litigation involving hormone replacement therapy drugs. These same prescriptions are being sold, distributed, advertised, prescribed and administered to Missouri citizens as admitted by defendants' counsel in argument. Admittedly, clinical surveys and studies involving Missouri citizens are and have been conducted by defendants with these pharmaceuticals.[20]

> To prevail on a claim that the trial court abused discretion finding the defendant has a Missouri . . . nexus, the defendant must produce substantial evidence clearly demonstrating that the corporate business activities in Missouri are limited or that those activities have no significant relationship to the jurisdiction in which the case is filed.[21]

The record is lacking on any limitation of business activities in Missouri and, to the contrary, shows a significant relationship with Missouri citizens. Defendants have targeted Missouri citizens for business, clinical studies and profit, but shun Missouri justice. If the safety, well being and future health of Missouri citizens is not a Missouri interest that merits judicial protection and Missouri adjudication, then what does? Must a Missouri citizen be harmed before Missouri judicial interest attaches? This author believes otherwise.

Defendants have a thriving pharmaceutical business in Missouri with resident and non-resident representatives. These contacts or incidents establishing personal ju-

---

16. *Id.* at 302–03; *Mauer,* 998 S.W.2d at 188; *Westbrooke,* 12 S.W.3d at 392.

17. *Westbrooke,* 12 S.W.3d at 394; *Besse,* 721 S.W.2d at 742; *Anglim,* 832 S.W.2d at 303; and *Mauer,* 998 S.W.2d at 189.

18. WEBSTER'S NEW INTERNATIONAL DICTIONARY 1649 (2d ed.1950).

19. *Anglim,* 832 S.W.2d at 304; *Westbrooke,* 12 S.W.3d at 393.

20. *Mauer,* 998 S.W.2d at 189 ("In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only.").

21. *Anglim,* 832 S.W.2d at 305; *Besse,* 721 S.W.2d at 743.

risdiction overlap with the nexus factor, giving Missouri citizens a strong interest in this litigation and justifying trial in Missouri.

The duty of establishing *forum non conveniens* lies with the defendants.[22] "The defendant has the burden of establishing all factors supporting a claim that a Missouri court is an inconvenient forum."[23] Defendants cite statistics showing the St. Louis City Circuit Court judges maintain the highest caseload, conduct more jury trials and involve 10–15% of their citizens on jury duty in fiscal years 1998–2003.[24] Using outdated statistics, defendants triumphantly proclaim that the St. Louis City Circuit Court is overburdened and its judicial efforts strained—a conclusion explicitly refuted by Judge Grady's orders. Judge Grady knows the judicial capabilities and limitations of the St. Louis City Circuit Court because he is the duly elected and current presiding judge of that court. In *Anglim*, this same Court supported the denial of *forum non conveniens* by St. Louis City Circuit Court Judge James Sanders. Moreover, this Court expressly deferred to Judge Sanders' knowledge of the judicial capacity and burdens of the St. Louis City Circuit Court, noting with confidence that Judge Sanders had been presiding judge of that court. Judge Grady deserves no less respect and deference.[25]

The statistics[26] suggest that the St. Louis City Circuit Court judges and jurors

---

**22.** *Anglim*, 832 S.W.2d at 304–05; *Mauer*, 998 S.W.2d at 190; *Westbrooke*, 12 S.W.3d at 392–93; and *Taylor v. Farmers Insurance, Inc.*, 954 S.W.2d 496, 501–03 (Mo.App.1997).

**23.** *See also*, *Anglim*, 832 S.W.2d at 304–05.

**24.** *State ex rel. Linthicum v. Calvin*, 57 S.W.3d 855, 860 (Mo. banc 2001). Interestingly, the St. Louis City Circuit Court was credited with 506 jury trials consuming 1388 days for fiscal year 2000. Assuming twelve person juries, 506 juries required only 6,072 jurors to hear and decide the cases. The average jury trial took 2.74 days or less than 3 trial days. Certainly, that constitutes dedicated service, but that data hardly establishes an "overburdened" status, considering the population of the City of St. Louis was 348,189 (actual) according to the 2000 U.S. Census, *www.factfinder.census.gov*, U.S. Census Bureau–American FactFinder Portion. If so, the percentage of citizen involvement was less than 2% annually. Noteworthy, the City of St. Louis population remains stable, the 2004 estimate being 332,662 and the 2007 estimate being 350,759.

**25.** *Anglim*, 832 S.W.2d at 304 ("[T]he trial court may take notice of the congestion of its own docket. In this case, the trial judge is experienced and has served as the presiding judge of his circuit. He was undoubtedly aware of the state of the docket in St. Louis when the motion was heard.").

**26.** This judge has examined exhibit 30, the January 2004, Report of the Joint Interim Committee on Judicial Resources in Missouri. The exhibit consisting of two face pages, the Table of Contents, page four signature page for members of the Joint Interim Committee on Judicial Resources in Missouri and only three pages of data, i.e., pages 45, 47 and 49, from a 57-page report detailing the allocation of Missouri judicial resources. Page 45 compared the 45 judicial circuits for fiscal year 2003 for "Average Filing per Judge." The caseload analysis was divided into nine distinct categories and an overall category. The St. Louis City Circuit Court ranked 30th in the overall category of average filings per judge, but first in "Complex CCV" cases and second in "Circuit Civil" cases. The St. Louis City Circuit Court ranked 29, 12, 27, 32, 45, 26 and 3 in other categories. Notably, the 16th Circuit ranked 7th overall, and 3, 9, 1, 2, 15, 21, 42, 25 and 12. Similarly, the 31st Circuit was 1st in overall filings and 2, 5, 5, 4, 6, 13, 1, 23 and 19 in individual categories—certainly emblematic of great service. Likewise, the 19th Circuit, which was first in the "Circuit Civil" category and 13th overall, provided great service. The 23rd Circuit was 4th overall, and the 29th Circuit was 2nd overall. Page 47 listed each circuit's number of jury trials for fiscal years 1998 through 2003, and page 49 listed each circuit's number of jury

are the hardest working judges and jurors in Missouri, possessing a strong work ethic. However, defendants request this Court to find that the St. Louis City Circuit Court is overburdened and, then, to deny the St. Louis City Circuit Court the opportunity to sit in judgment on matters involving its citizens' health and well-being. Certainly, Judge Grady is deserving of equal dignity and deference on his knowledge of his court's resources as was afforded to his predecessor, Judge Sanders.[27] The statistics are unpersuasive. There is no statistic that the St. Louis City Circuit Court is presently unable to meet time deadlines mandated by this Court or is failing to keep pace with other circuit courts in processing cases. Nor are there any statistics showing a backlog of cases in the St. Louis City Circuit Court. Again, this Court's ruling must be based on those facts that were before the trial court when it ruled.[28]

In short, as with the nexus factor, defendants fail to establish that the judicial burdens on the St. Louis City Circuit Court mandate imposition of *forum non conveniens.*

Factor Two, the location of witnesses, strives to provide live testimony by eyewitnesses and treating physicians with a local forum. Defendants here contend that the live testimony of plaintiffs' prescribing and treating physicians at trial is imperative. In the real world of 2007 America, videotape testimony by expert witnesses, especially physicians, is more common place than live testimony.[29] Furthermore, defendants contend that a trial at those physicians' state of residence subjects them to subpoena power and live mandated appearances. Any experienced and proficient trial attorney will, at all costs, shy away from *mandating* witness' appearances, especially physician expert witnesses, because of the hostility engendered and the almost certain adverse consequences.

*Besse* targeted eyewitnesses and treating physicians for live testimony by providing a convenient local forum, but expressly acknowledged that "doctors often testify by deposition, even in trials in their home area." [30] *Besse* expressly omitted retained expert witnesses from "convenience" consideration, noting that adequate compensation would lure them to appear and testify in distant trial forums. "[T]he moving party has the initial burden of establishing the relative inconvenience caused by the witnesses' location and, on appeal, the aggrieved party must also show that discretion was abused." [31]

---

trial days for fiscal years 1998 through 2003. Admittedly, the St. Louis City Circuit Court was 1st in both categories for the fiscal years 1998 through 2003. Again, this establishes the great service and dedication by the St. Louis judges and jurors to the administration of justice. The information contained in the report omits data on population, filings in each of the nine categories, costs, jury costs, finances and other related information. Logically, mathematically and statistically to deduce from exhibit 30 that the St. Louis City Circuit Court is "overburdened" is hardly persuasive, especially considering its overall standing relative to the other circuits.

**27.** *Anglim,* 832 S.W.2d at 304.

**28.** *Anglim,* 832 S.W.2d at 303 ("On appeal, in determining whether the trial court's ruling amounted to an abuse of discretion, only those facts will be considered that were before the trial court when it ruled on the motion to dismiss, and the evidence will be viewed in a light favorable to the result of the trial court."); *Westbrooke,* 12 S.W.3d at 392.

**29.** Being a trial judge for almost 21 years, this jurist's experience is that live testimony of physicians is a pipedream and nostalgic memory.

**30.** *Besse,* 721 S.W.2d at 743.

**31.** *Anglim,* 832 S.W.2d at 304.

Therefore, in cases involving hormone replacement therapy in this modern video-tape/CD culture, defendants will be well able to present their evidence in St. Louis City Circuit Court by electronic reproduction.

Finally, defendants imply there are equally available forums for hormone replacement therapy trials, suggesting that affirmative defenses in other forums can be waived and trials fairly conducted. Interestingly, in addressing the "witness" availability factor, defendants were both untrusting and skeptical of St. Louis City Circuit Court's limited subpoena power "to compel" testimony by non-resident witnesses, but entreat this Court "to trust" foreign tribunals to waive affirmative defenses in the interest of justice.

Again, there was no information, data or commitment by any party or foreign tribunal that these hormone replacement therapy cases will receive a fair and just adjudication elsewhere—only statements by counsel. In the absence of that assurance, caution must prevail, and this Court must resolve Factor Six with certainty—that being Missouri justice.[32]

Evaluation of the justice prong necessarily includes consideration of the impartiality and fairness of the St. Louis city jurors. Already Judge Wolff has established their dedication to duty and willingness to serve.[33] However, in this instance, the St. Louis city jury would be significantly impartial because no litigant has

Missouri identity. Moreover, St Louis city is an ideal forum given that the plaintiffs have filed suit there and the defendants have chosen to conduct their pharmaceutical businesses in St. Louis.

Again, Judge Grady expressly decreed that these ten cases would not burden the St. Louis City Circuit Courts. Additionally, defendants have established thriving businesses in Missouri. In *Holliger*,[34] this Court held that a sizable business with many resources was not unfairly treated by a Missouri adjudication. Similarly, these defendants will not be either. Lastly, without supportive facts establishing the relevant factors essential for *forum non conveniens*, this Court reaches the same conclusion as the *Westbrooke* court. "We could reach that conclusion only through speculation and not based on a record supported by facts."[35]

Finally, in August 1999, the Missouri Court of Appeals, Western District, declared in *Mauer* "that no Missouri appellate court has ever issued a writ directing a trial court to dismiss a case on grounds of *forum non conveniens*."[36] Accepting that conclusion and supplementing that research to date, the fact remains "that no Missouri appellate court has ever issued a writ directing a trial court to dismiss a case on grounds of *forum non conveniens*."[37] Magnifying the solemnity of this decision is the absolute reluctance of appellate court judges to issue writs in *forum non conveniens* cases.[38] Disregard-

32. *Taylor*, 954 S.W.2d at 503 (In a similar circumstance, the Missouri Court of Appeals, Southern District, retained jurisdiction of the case, noting that "We decline to speculate on what a Nevada court would hold under the circumstances of this case.").

33. *Calvin*, 57 S.W.3d at 860.

34. *Holliger*, 986 S.W.2d at 169–70.

35. *Westbrooke*, 12 S.W.3d at 393.

36. *Mauer*, 998 S.W.2d at 191.

37. *Id.*

38. *Mauer*, 998 S.W.2d at 191 (". . . we decline at this point to take the extraordinary measure of directing the trial court to dismiss the action."); *Holliger*, 986 S.W.2d at 169 ("While a petition for writ of prohibition may be proper means of obtaining relief from an order denying dismissal on *forum non conve-*

ing established boundaries between discretion and review is ill advised. Moreover, reasonable minds, including the Missouri Court of Appeals, Eastern District and this jurist, concur. Established precedent firmly supports the trial court's exercise of discretion when reasonable minds differ.[39]

I respectfully concur in quashing the preliminary writ, believing that Judge Grady's denial of *forum non conveniens* dismissal was factually and legally correct and, furthermore, that the denial was discretionary within his jurisdiction and deserving of this Court's affirmation.

*niens* grounds, the discretionary nature of the trial court's order portends that a writ rarely will be granted. Prohibition is an extraordinary remedy to prevent exercise of extrajurisdictional power and is not a writ of right. A remedial writ is not an appropriate remedy to resolve issues which may be addressed through appeal.").

39. *Anglim*, 832 S.W.2d at 303 ("... if reasonable minds can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion."); *Mauer*, 998 S.W.2d at 188 ("... if reasonable minds can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.").